**BURSOR & FISHER, P.A.**
L. Timothy Fisher (State Bar No. 191626)
Joel D. Smith (State Bar No. 244902)
Sean L. Litteral (State Bar No. 331985)
1990 North California Boulevard, Suite 940
Walnut Creek, CA 94596
Telephone: (925) 300-4455
Facsimile: (925) 407-2700
E-Mail: ltfisher@bursor.com
         jsmith@bursor.com
         slitteral@bursor.com

*Attorneys for Plaintiff*

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| VANESSA GONZALEZ, individually and on behalf of all others similarly situated, <br><br> Plaintiff, <br><br> v. <br><br> PERFORMIX LLC, <br><br> Defendant. | Case No. <br><br> **CLASS ACTION COMPLAINT** <br><br> <u>JURY TRIAL DEMANDED</u> |

Plaintiff Vanessa Gonzalez ("Plaintiff"), individually and on behalf of all other similarly situated purchasers (hereafter the "Class"), brings this consumer class action against Performix LLC ("Defendant") for the distribution, advertisement, and sale of dietary supplement capsules sold as SST Timed Release Metabolism (the "Product") and alleges as follows:

## JURISDICTION AND VENUE

1. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(d)(2)(A) because this case is a class action where the aggregate claims of all members of the proposed class are in excess of $5,000,000.00, exclusive of interest and costs, and members of the proposed class are citizens of states different from Defendant. This Court also has supplemental jurisdiction over state law claims pursuant to 28 U.S.C. § 1367.

2. Pursuant to 28 U.S.C. § 1391, this Court is the proper venue for this action because Plaintiff is a citizen of California and resides in this District, and because Plaintiff purchased her Product in this District. Moreover, Defendant distributed, advertised, and sold the Product, which is the subject of the present complaint, in this District.

## THE PARTIES

3. Plaintiff Vanessa Gonzalez is an individual domiciled in Modesto, California. In January 2020, Plaintiff Gonzalez purchased SST Timed Release Metabolism from a GNC Store located in Modesto, California. She purchased these capsules for herself. In doing so, Plaintiff Gonzalez relied upon Defendant's advertising, packaging, labeling and other promotional materials, which were jointly prepared and approved by Defendant and its agents and disseminated through advertising media containing the misrepresentations, concealments and unlawful claims alleged herein. Plaintiff Gonzalez would not have purchased Defendant's capsules if she had known that they were unlawful to sell under California law.

4. Defendant Performix LLC is a Colorado company with its principal place of business in New York, New York. At times relevant to this Complaint, Defendant has advertised, marketed, and sold a variety of cosmetic products, including that at issue, to consumers throughout the United States and the State of California. Defendant has sold the Product directly to consumers via the Internet and through third-party retail stores throughout the United States, including in this

District.

**FACTUAL ALLEGATIONS**

**The Labelling Requirements for Dietary Supplements**

5. In 2020, the dietary supplements market in the U.S. was estimated at $46 Billion, and the global market for dietary supplements is expected to grow to $298.5 Billion by 2027.[1]

6. For decades, consumers have been prioritizing their health and wellness through the use of dietary supplements. That interest took on even greater resonance when the COVID-19 pandemic struck last year, with millions of American consumers seeking out ways to stay healthy and boost their immunity.

7. According to leading market research firm IRI, spurred by the pandemic, the vitamin and supplement category has skyrocketed. IRI calculates that vitamin, mineral and supplement sales have risen 21% since the pandemic began, with market shares of certain types of vitamins and supplements increasing exponentially. Crowe, Emily, Behind the growth in the dietary supplement, vitamin market. *Smart Brief* (March 3, 2021) (accessible at: https://www.smartbrief.com/original/2021/03/behind-growth-dietary-supplement-vitamin-market).

8. Larry Levin, executive vice president of consumer and shopper marketing at IRI states that: "Prior to COVID-19, 80% of consumers were using vitamins, minerals and supplements as part of their ritual anyway, but I think the pandemic just strengthened their commitment to the product category." *Id*.

9. IRI data shows that buying vitamins and supplements has been at the forefront of consumers' minds since the early days of the pandemic, with 35% of households buying vitamins in the four weeks ending April 5, 2020. *Id*. The momentum has continued, with 40.6 million households purchasing vitamins in January 2021, compared to 35.5 million the prior year. According to Mr. Levin, "When you think about the impact that category has on our lifestyle, it's really profound." *Id*.

---

[1] https://www.businesswire.com/news/home/20210219005385/en/Global-Dietary-Supplements-Market-Report-2020-Market-to-Reach-298.5-Billion-by-2027---U.S.-Market-is-Estimated-at-46-Billion-While-China-is-Forecast-to-Grow-at-12.7-CAGR---ResearchAndMarkets.com.

10. The COVID-19 pandemic has demonstrated more than ever that consumers will seek to support their health through dietary supplements and, in making those critical purchasing decisions, must be able to trust that labels and claims for dietary supplements are truthful, substantiated, and meet all legal requirements to be lawfully sold over the counter.

11. The Federal Food, Drug, and Cosmetic Act of 1938, 21 U.S.C. § 301 *et seq*. (the "FFDCA" or the "Act"), as amended by the Dietary Supplement Health and Education Act of 1994, Pub. L. No. 103–417, 108 Stat. 4325 ("DSHEA"), as well as the regulations implementing the FFDCA and DSHEA set forth the legal requirements for labelling and selling dietary supplements. These requirements are fully incorporated into California's Sherman Food, Drug, and Cosmetic Law, Cal. Health & Safety Code § 109875 *et seq*. ("Sherman Law").

12. Under the FFDCA, a "drug" is defined, in part, as an "article[] intended for use in the diagnosis, cure, mitigation, treatment, or prevention of disease in man or other animals" or an "article[] (other than food) intended to affect the structure or any function of the body of man or other animals."

13. Under 21 U.S.C. §§ 331(d) and 355(a), the FDA must approve new drugs before they can be sold on the market. The FFDCA creates an exemption from this pre-approval process for dietary supplements "intended to affect the structure or function of the body" if the dietary supplements carry a prominent FDA disclaimer on the product labels and advertising.

14. Under these regulations, supplement companies like Defendant are prohibited from labeling, marketing, or selling dietary supplements bearing claims that "describe[] the role of a nutrient or dietary ingredient intended to affect the structure or function in humans, [or that] characterize[] the documented mechanism by which a nutrient or dietary ingredient acts to maintain such structure or function" (known as "structure/function claims"), unless the label carries a prominent disclaimer (the "DSHEA Disclaimer") on each panel bearing such claims. *See* 21 U.S.C. §§ 321(g)(1), 331(d), 343(r)(1)(B), 343(r)(6), 355(a); 21 C.F.R. § 101.93(d) ("On product labels and in labeling (e.g., pamphlets, catalogs), the disclaimer shall appear on each panel or page where there [is a structure/function claim].").

15. The DSHEA Disclaimer must be prominent and bolded, and it must read:

> **These statements have not been evaluated by the Food and Drug Administration. This product is not intended to diagnose, treat, cure, or prevent any disease.**

21 U.S.C. § 343(r)(6)(C); *see also* 21 C.F.R. § 101.93(b)-(e).

16. As one Court recently explained, the DSHEA Disclaimer requirement is important for consumer safety:

> The disclaimer requirement aligns with the FDA's recognition that few dietary supplements have been the subjects of adequately designed clinical trials. Without the disclaimer, structure/function claims convey therapeutic drug claims, thereby encouraging self-treatment without the benefit of a medical diagnosis or treatment. The point of the disclaimers are to make sure that consumers understand that structure/function claims are not reviewed by [the] FDA prior to marketing, and to caution consumers that dietary supplements bearing such claims <u>*are not for therapeutic uses*</u>.

*Arora v. GNC Holdings, Inc.*, No. 19-cv-02414-LB, 2019 WL 6050750, at *3 (N.D. Cal. Nov. 15, 2019) (internal quotation marks and citations omitted) (emphasis in original).

17. Dietary supplements that do not bear the required DSHEA Disclaimer on **all** panels with structure/function claims, and/or the disclaimer lacks the prominence required, are misbranded and unlawful. 21 U.S.C. § 343(r)(1)(B), (r)(6); 21 C.F.R. § 101.93(d).

18. Moreover, such products qualify as "drugs" under the FFDCA because they are marketed with structure/function claims but do not include the DSHEA Disclaimer. *See* 21 U.S.C. §§321(g)(1), 343(r)(6). To avoid being regulated as drugs under the FFDCA, dietary supplements bearing structure/function claims must comply with the DSHEA Disclaimer requirements. *Id*.

19. Misbranded dietary supplements and/or unapproved drugs are unlawful and cannot be sold legally under federal and identical California law. 21 U.S.C. §§ 331, 333.

**Defendant Performix LLC's Unlawful Advertising, Sale and Labeling of the Product**

20. Unfortunately for consumers, Defendant Performix LLC continues to advertise, sell, and label its product in violation of the statutes referred to herein.

21. In or around January 2020, Plaintiff purchased Defendant Performix LLC's vitamins. However, as the photograph below demonstrates, Defendant's Product does not comply with the laws and regulations set out herein.

22. The left-facing panel (of which clear photos are not readily available) of Defendant's SST Timed Release Metabolism explicitly states under the heading "ENERGY AND METABOLISM," that *"Performix SST is powered by Caffeine and Capsimax to accelerate your body's metabolism, provide sustained energy, and support fat breakdown."* (emphasis added). Defendant also mentions that *"The inclusion of clinically-tested Capsimax, a naturally-derived, highly active concentrate of natural capsaicin which has been shown to increase resting energy expenditure by about 100 calories a day, allows Performix SST to accelerate your own body's metabolism to provide energy."* (emphasis added). Defendant further mentions, under the heading "FOCUS," that *"Performix SST is powered by Caffeine, Teacrine, and Sensoril to promote focus, clarity, concentration, and alertness."* (emphasis added). Each of these statements constitutes a structure/function claim. However, none of these statements are accompanied by the requisite DSHEA Disclaimer on that panel.



**Plaintiff's Purchase of the Product**

23. Plaintiff purchased the Product during the relevant class period. Prior to purchasing the Product, Plaintiff saw, heard, and relied upon packaging, labeling, advertisements, representations and statements made by Defendant, including advertisements and labels set forth above.

24. As a result of Defendant's representations, sale, and offer for sale, of the Product, Plaintiff believed that the Product was lawful, correctly branded, subject to a governmental review and approval process, and had therapeutic value, including that they were intended to prevent or treat disease.

25. Plaintiff has suffered injury in fact and lost money as a result of Defendant's conduct described herein. Plaintiff would not have purchased the Product had she known that the Product was unlawful to sell. Plaintiff otherwise paid more for the Product than had she known the truth about it and that it was unlawful to sell.

26. If Plaintiff was confident that the marketing and sale of the Product was lawful, truthful, and non-misleading, Plaintiff may purchase the Product in the future. At present, however, Plaintiff cannot purchase the Product because Plaintiff cannot be confident that it is lawful and that its labeling is truthful and non-misleading.

27. On July 16, 2021, Plaintiff issued a pre-suit demand for corrective action to Defendant, notifying it of its violations of California law. *See* Exhibit A. Defendant refused to repair or correct its violations, thus requiring Plaintiff to file this action.

## CLASS ACTION ALLEGATIONS

28. Class Definition: Plaintiff brings this class action on behalf of herself, and as a class action on behalf of the following putative classes (the "Class"):

**Nationwide Class**

All individual residents of the United States who purchased the Product through the date of class certification. Excluded from the Class are: (1) Defendant and all directors, officers, employees, partners, principals, shareholders and agents of Defendant; (2) Any currently sitting United States District Court Judge or Justice, and the current spouse and all other

persons within the third-degree of consanguinity to such judge/justice; and (3) Class Counsel.

**California Sub-Class**

All individual residents of the State of California who purchased the Product through the date of class certification. Excluded from the Class are: (1) Defendant and all directors, officers, employees, partners, principals, shareholders and agents of Defendant; (2) Any currently sitting United States District Court Judge or Justice, and the current spouse and all other persons within the third-degree of consanguinity to such judge/justice; and (3) Class Counsel.

29.  Plaintiff reserves the right to amend the Class definitions if further investigation and discovery indicates that the Class definitions should be narrowed, expanded, or otherwise modified.

30.  <u>Numerosity and Ascertainability</u>: Plaintiff does not know the exact number of members of the putative classes. Due to Plaintiff's initial investigation, however, Plaintiff is informed and believes that the total number of Class members is at least in the tens of thousands, and that members of the Class are numerous and geographically dispersed throughout the United States and California. While the exact number and identities of the Class members are unknown at this time, such information can be ascertained through appropriate investigation and discovery, including Defendant's records, either manually or through computerized searches.

31.  <u>Typicality and Adequacy</u>: Plaintiff's claims are typical of those of the proposed Class, and Plaintiff will fairly and adequately represent and protect the interests of the proposed Class. Plaintiff does not have any interests that are antagonistic to those of the proposed Class. Plaintiff has retained counsel competent and experienced in the prosecution of this type of litigation.

32.  <u>Commonality</u>: The questions of law and fact common to the Class members, some of which are set out below, predominate over any questions affecting only individual Class members:

  a.  whether Defendant committed the conduct alleged herein;

     b. whether Defendant's conduct constitutes the violations of laws alleged herein;

     c. whether Defendant's labeling, sale and advertising set herein are unlawful, untrue, or are misleading, or reasonably likely to deceive;

     d. whether the Product are adulterated and/or misbranded under the California Health & Safety Code and identical federal law;

     e. whether Defendant knew or should have known that the representations were false or misleading;

     f. whether Defendant knowingly concealed or misrepresented material facts for the purpose of inducing consumers into spending money on the Product;

     g. whether Defendant's representations, concealments and non-disclosures concerning the Product are likely to deceive the consumer;

     h. whether Defendant's representations, concealments and non-disclosures concerning the Product violate the UCL and/or the common law;

     i. whether Defendant should be permanently enjoined from making the claims at issue; and

     j. whether Plaintiff and the Class are entitled to restitution and damages.

33. <u>Predominance and Superiority</u>: Common questions, some of which are set out above, predominate over any questions affecting only individual Class members. A class action is the superior method for the fair and just adjudication of this controversy. The expense and burden of individual suits makes it impossible and impracticable for members of the proposed Class to prosecute their claims individually and multiplies the burden on the judicial system presented by the complex legal and factual issues of this case. Individualized litigation also presents a potential for inconsistent or contradictory judgments. In contrast, the class action device presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court on the issue of Defendant's liability. Class treatment of the liability issues will ensure that all claims and claimants are before this Court for consistent adjudication of the liability issues.

34. <u>Manageability</u>: The trial and litigation of Plaintiff's and the proposed Class' claims are manageable. Defendant has acted and refused to act on grounds generally applicable to the Class, making appropriate final injunctive relief and declaratory relief with respect to the Class as a whole.

35. <u>Notice</u>: If necessary, notice of this action may be affected to the proposed Class through publication in a manner authorized in the California Rules of Court, Civil Code, and/or the Federal Rules of Civil Procedure. Also, Class members may be notified of the pendency of this action by mail and/or email, through the distribution records of Defendant, third party retailers, and vendors.

**FIRST CAUSE OF ACTION**
**VIOLATION OF UNFAIR COMPETITION LAW**
**(CAL. BUS. & PROF. CODE § 17200, *et seq.*)**
**(Unlawful and Unfair Prongs of the Act)**

36. Plaintiff incorporates by this reference the allegations contained in the preceding paragraphs as if fully set forth herein.

37. Plaintiff brings this claim individually and on behalf of the proposed California Sub-Class against Defendant.

38. California Business and Professions Code § 17200 prohibits "any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising." For the reasons discussed above, Defendant has engaged in unlawful, unfair, and deceptive acts, and untrue and misleading advertising in violation of California Business & Professions Code §17200.

39. As alleged herein, Plaintiff has standing to pursue this claim as Plaintiff has suffered injury in fact and has lost money or property as a result of Defendant's actions. Specifically, Plaintiff purchased the Product for her own personal use. In so doing, Plaintiff relied upon the representations referenced above. Plaintiff would not have purchased the Product had she known that the Product was unlawful to sell in California and the United States.

40. **Unlawful Business Practices:** Defendant's actions, as alleged herein, constitute illegal and unlawful practices committed in violation of the Business & Professions Code §17200.

41. As alleged herein, Defendant has violated provisions of the FDCA, as amended by DSHEA, and implementing regulations, and in turn, the California Health & Safety Code,

including, at least, the following sections: 21 C.F.R. § 101.93(b); 21 U.S.C. § 403(r)(6)(C); 21 U.S.C. § 343(r)(6); and 21 U.S.C. §§ 331, 333.

42. As alleged herein, Defendant's conduct, including the above violations, violates the provisions of the California Sherman Food, Drug, and Cosmetic Law, Cal. Health & Safety Code § 109875 et seq. (the "Sherman Law"), including, but not limited to, the following sections: § 110100; § 110395; § 110398; § 110400.

43. In addition, Defendant has committed unlawful business practices by, *inter alia*, making the representations and omissions of material facts, as set forth more fully herein, and violating California Business & Professions Code § 17500, et seq., and the common law.

44. In addition, Defendant has unlawfully manufactured, advertised, and disseminated false advertisements of the Product, and that the product advertising and packaging contain false or misleading statements about the Product in violation of Bus. & Prof. Code § 17500 which govern Defendant's conduct.

45. Plaintiff and the California Sub-Class reserve the right to allege other violations of law which constitute other unlawful business acts or practices. Such conduct is ongoing and continues to this date.

46. **Unfair Business Practices**: California Business & Professions Code § 17200 also prohibits any "unfair ... business act or practice."

47. Defendant's acts, omissions, misrepresentations, practices and non-disclosures as alleged herein also constitute "unfair" business acts and practices within the meaning of Business & Professions Code § 17200 *et seq*. in that its conduct is substantially injurious to consumers, offends public policy, and is immoral, unethical, oppressive, and unscrupulous as the gravity of the conduct outweighs any alleged benefits attributable to such conduct.

48. There were reasonably available alternatives to further Defendant's legitimate business interests, other than the conduct described herein.

49. Pursuant to section 17203 of the California Business & Professions Code, Plaintiff and the California Sub-Class seek an order of this court enjoining Defendant from continuing to engage in unlawful and unfair business practices and any other act prohibited by law, including,

but not limited to: (a) selling, marketing, or advertising the Product with representations set forth above; (b) engaging in any of the illegal, misleading, unlawful and/or unfair conduct described herein; and (c) engaging in any other conduct found by the Court to be illegal, misleading, unlawful, and/or unfair conduct.

50. In addition, Plaintiff requests that this Court enter such orders or judgments as may be necessary to restore to any person in interest any money which may have been acquired by means of such illegal practices as provided in Business & Professions Code § 17203, and for such other relief as set forth below.

51. Plaintiff engaged counsel to prosecute this action and is entitled to recover costs and reasonable attorney's fees according to proof at trial.

## SECOND CAUSE OF ACTION
## UNJUST ENRICHMENT

76. Plaintiff incorporates by this reference the allegations contained in the preceding paragraphs as if fully set forth herein.

77. Plaintiff brings this claim individually and on behalf of the proposed Class against Defendant.

78. As a result of Defendant's unlawful and misleading labeling, marketing, and sale of the Product, Defendant was enriched at the expense of Plaintiff.

79. Defendant sold Product to Plaintiff that was not capable of being sold legally and that was worthless.

80. Plaintiff paid a premium price for the Product.

81. Thus, it is against equity and good conscience to permit Defendant to retain the ill-gotten benefits received from Plaintiff and the Nationwide Subclass members given that the Product was not what Defendant purported it to be.

82. It would be unjust and inequitable for Defendant to retain the benefit, warranting restitutionary disgorgement to Plaintiff and Class members of all monies paid for the Product, and/or all monies paid for which Plaintiff and the Class members did not receive benefit.

83. As a direct and proximate result of Defendant's actions, Plaintiff and Class

members have suffered damages in an amount to be proven at trial.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, on behalf of herself and as representative of all other persons similarly situated, prays for judgment against Defendant, as follows:

1. An order certifying that the action may be maintained as a Class Action under Fed. R. Civ. P. 23;

2. An order permanently enjoining Defendant from pursuing the policies, acts, and practices complained of herein;

3. An order requiring Defendant to pay restitution to Plaintiff and all members of the Class;

4. An order requiring Defendant to pay damages to Plaintiff and all members of the Class;

5. An order requiring Defendant to pay punitive damages to Plaintiff and all members of the Class;

6. For pre-judgment interest from the date of filing this suit;

7. For reasonable attorneys' fees;

8. Costs of this suit; and,

9. Such other and further relief as the Court may deem necessary and appropriate.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a jury trial on all issues so triable.

Dated: August 20, 2021

Respectfully submitted,

**BURSOR & FISHER, P.A.**

By: */s/ L. Timothy Fisher*

L. Timothy Fisher (State Bar No. 191626)
Joel D. Smith (State Bar No. 244902)
Sean L. Litteral (State Bar No. 331985)
1990 North California Boulevard, Suite 940
Walnut Creek, CA  94596

Telephone: (925) 300-4455
Facsimile:  (925) 407-2700
E-Mail: ltfisher@bursor.com
jsmith@bursor.com
slitteral@bursor.com

*Attorneys for Plaintiff*